FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

2005 OCT 11  AM 9:21

CLERK Stephe
SO. DIST. OF GA.

JAMES DUNLAP, on behalf of
himself and all
others similarly situated,

    Plaintiffs

CV405-186

v.

Civil Action No. 2:05-0136

FRIEDMAN'S, INC.,
d/b/a Friedman's Jewelers,
a Delaware corporation, and
AMERICAN BANKERS INSURANCE
COMPANY OF FLORIDA, INC., and
AMERICAN BANKERS LIFE ASSURANCE
COMPANY OF FLORIDA and ALAN HOPKINS and
WILLIAM PERRY and NANCY TANOUKHI and
ROY BATSON and JOHN DOE and JANE DOE

    Defendants

MEMORANDUM OPINION AND ORDER

Pending are motions filed by defendants American Bankers Insurance Company of Florida ("ABIC") and American Bankers Life Assurance Company of Florida ("ABAC")[1] (1) for relief from the court's preliminary scheduling order, (2) to strike plaintiff's integrated motion for leave to file pleading and memorandum in response, and (3) to transfer this action to the United States Bankruptcy Court for the Southern District of Georgia. The motions were filed respectively on April 13, August 2, and February 24, 2005. Also pending is plaintiff's motion for

---

[1] ABIC and ABAC are referred to collectively as the movants.

leave to file a pleading and memorandum in response to the movants' supplemental memorandum in support of the transfer motion, filed July 25, 2005.

In the interests of complete briefing, the court ORDERS that plaintiff's motion be, and it hereby is, granted. For the same reason, the court ORDERS that the movants' motion to strike be, and it hereby is, denied.

I.

On September 20, 1999, plaintiff purchased a ring from a jewelry store in Cross Lanes, West Virginia, operated by defendant Friedman's, Inc. (Sec. Am. Compl. ¶ 19.) After he agreed to finance the ring, the salesperson presented plaintiff with a retail installment sales contract. (Id. ¶ 20.) Although the contract charged plaintiff for credit life and property insurance, (id. ¶ 21), he never requested the insurance and further alleges that the products and their associated charges were actively concealed from him. (Id. ¶¶ 24, 43.)

On May 4, 2000, plaintiff, on behalf of a class of similarly affected individuals, instituted this action in the Circuit Court of Kanawha County, West Virginia. (Pl.'s Resp. at

2.) He asserts personally, and on behalf of the class, that Friedman's, Inc. victimized its customers with a "broad pattern and scheme of fraudulent and deceptive conduct designed to charge consumers, without their knowledge or consent, for credit life insurance, credit disability insurance, and property insurance in connection with the purchase and financing of jewelry and/or other consumer goods." (Id. ¶ 44.) Although the pleading appears directed primarily at Friedman's, Inc., plaintiff alleges further that ABIC and ABAC, along with the individual defendants, "[a]ided, abetted, participated in, approved, sanctioned, conspired, implemented and/or ratified the conduct complained of . . . ." (Id. ¶ 57.)

The second amended complaint alleges claims for (1) violation of the West Virginia Consumer Credit and Protection Act, West Virginia Code sections 46A-1-101 to 46A-8-102, (2) selling insurance without a license in violation of West Virginia Code section 33-12-1(a), (3) common law fraud, (4) unconscionability, (5) breach of the duty of good faith, (6) common law negligence, (7) civil conspiracy, (8) joint venture between Friedman's, Inc., and the movants, (9) waiver, and (10) punitive damages.

3

This action has experienced a tortured procedural history. As noted by plaintiff, "[a]fter three appeals – two to the West Virginia Supreme Court of Appeals, and a second to the Fourth Circuit – the Circuit Court of Kanawha County certified . . . [the] case as a class action on February 11, 2004." (Pl.'s Resp. at 2.) On January 14, 2005, the case was derailed anew when Friedman's filed for protection under Chapter 11 in the United States Bankruptcy Court of the Southern District of Georgia ("Georgia bankruptcy court"). (Not. of Auto. Stay at 1.) On February 17, 2005, the movants removed pursuant to 28 U.S.C. §§ 157, 1331, 1334, 1441, 1446, 1452, and Rule 9027, Federal Rules of Bankruptcy Procedure. The notice of removal provides, inter alia, as follows:

> This action is also one . . . relating to a case under Title 11, because Friedman's is obligated to indemnify . . . [the movants] for any losses alleged in the complaint, pursuant to common law and/or a contractual indemnification clause. Any such indemnification obligation necessarily will have a direct and substantial impact on Friedman's bankruptcy estate and on its efforts to reorganize. Because of Friedman's obligation to indemnify, . . . [movants] are filing a proof of claim in the Friedman's Bankruptcy Court proceedings.

(Not. of Remov. ¶ 9.) Plaintiff has not moved to remand. Further, he has filed on behalf of the class a claim in the Georgia bankruptcy court. Movants have now done likewise.

4

In the transfer briefing, the parties dispute the applicability of two different transfer provisions, 28 U.S.C. §§ 1404(a) and 1412, and the applicable factors to be reviewed under each.

II.

A.   The Choice Between 28 U.S.C. §§ 1404(a) and 1412

Title 28 U.S.C. § 1412 deals with changes of venue in certain actions and provides as follows:

> A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties.

28 U.S.C. § 1412. The general, or default, change-of-venue statute found in 28 U.S.C. § 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). One district court recently summed up the unusual state of the law regarding the choice between section 1412 and 1404(a) for change-of-venue purposes:

> There is a split of authority on the issue. Some courts maintain that transfer of actions "related to" bankruptcy proceedings is governed by § 1412. See In re

5

Bruno's, 227 B.R. 311, 323 (Bankr. N.D. Ala. 1998); Storage Equities v. Delisle, 91 B.R. 616 (N.D. Ga. 1988); In re Harnischfeger Industr., 246 B.R. 421 (Bankr. N.D. Ala. 2000); Wittes v. Interco Inc., 139 B.R. 718 (Bankr. E.D. Mo. 1992); Twyman v. Wedlo, Inc., 204 B.R. 1006 (Bankr. N.D. Ala. 1996); SBKC Service Corp. v. 1111 Prospect Partners, 204 B.R. 222 (Bankr.D.Kan.1996); In re Waits, 70 B.R. 591 (Bankr. S.D.N.Y. 1987); In re Oceanquest Feeder Serv., 56 B.R. 715 (Bankr. D. Conn. 1986); Burlingame v. Whilden, 67 B.R. 40 (Bankr. M.D. Fla. 1986); General Instrument Corp. v. Financial and Bus. Serv., 62 B.R. 361 (Bankr. N.D. Ga.1986); McLemore v. Thomasson, 60 B.R. 629 (Bankr. M.D. Tenn. 1986). Other courts maintain that § 1404(a) controls. See Rumore v. Wamstad, No. 01-2997, 2001 WL 1426680, at *2 (E.D.La. Nov.13, 2001); Tultex Corp. v. Freeze Kids, L.L.C., 252 B.R. 32 (S.D.N.Y. 2000); Ni Fuel Co., Inc. v. Jackson, 257 B.R. 600, 623 (N.D. Ok. 2000); Jackson v. Venture Dept. Stores, Inc., 1998 WL 778057, *2 (N.D. Ill. 1998); Searcy v. Knostman, 155 B.R. 699 (S.D. Miss. 1993); Murray, Wilson and Hunter v. Jersey Boats, No. 91-7733, 1992 WL 37516, at *3 (E.D. Pa. Feb. 21, 1992); In re JCC Capital Corp., 147 B.R. 349 (Bankr. S.D.N.Y. 1992); In re Thomson McKinnon Securities, 126 B.R. 833, 834-35 (Bankr. S.D.N.Y. 1991); Goldberg Holding Corp. v. NEP Productions, 93 B.R. 33, 34 (S.D.N.Y. 1988); United States for the Use of Metal Trims Industries, Inc. v. Klein Construction, No. 83-2146, 1985 WL 3020 (Oct. 9, 1985). Interestingly, courts have reached different conclusions as to which interpretation constitutes the majority view. Cf. In re Bruno's, 227 B.R. at 323 (majority of cases use § 1412 transfers), with Rumore, 2001 WL 1426680, at *2 ("most courts" hold § 1404 governs transfer of "related to" actions).

City of Liberal v. Trailmobile Corp., 316 B.R. 358, 362 (D. Kan. 2004). The principal commentator concludes that section 1412 governs. See 1 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 4.04[1] (15th ed. rev. 2005)("Section 1412 of title 28 applies to changes of venue both of (a) cases under title 11

6

and (b) civil proceedings arising under title 11, or arising in or related to cases under title 11" and stating further "A few courts treat related claims and causes of action somewhat differently for change-of-venue purposes, a conclusion not to be recommended.")

In Trailmobile, a decision that appears to have been painstakingly researched, United States District Judge Thomas Marten noted in dicta that he too would choose the section 1412 fork of authority:

> If the court were to resolve the matter, it would find that § 1412 controls, and find that the line of decisions exemplified in In re Bruno's is the more persuasive. As that court noted, this interpretation is supported on two grounds. The plain language of § 1412 provides that it applies to a change of venue of a Title 11 Bankruptcy case or proceeding, while § 1404(a) refers generally only to a "civil action." Moreover, Fed.R. Bankr.7087, which deals with removed adversary proceedings[,] explicitly references § 1412 rather than § 1404(a).

Trailmobile, 316 B.R. at 362.

The court observes additionally that section 1404 would, in perhaps a large number of cases, thwart transfer. This is so because the related-to action might not have met, at the time of its filing, the jurisdictional or venue prerequisites making it capable of being "brought" in the home court where the bankruptcy case is pending, a requirement imposed by the text of

7

section 1404. Such an outcome would dilute the well-settled presumption that 'related to' proceedings should be litigated in the "home court[.]" See Hohl v. Bastian, 279 B.R. 165, 177-78 (W.D. Pa. 2002) ("[T]he home court presumption provides that a court in which the bankruptcy case itself is pending is the proper venue for adjudicating all related litigation, including those suits which have been filed in other state or federal courts."); Blanton v. IMN Fin. Corp., 260 B.R. 257, 267 (M.D.N.C. 2001) ("[M]any courts presume that the proper venue for a proceeding related to a bankruptcy case is in the district hearing the bankruptcy case"); In re Vital Link Lodi, Inc., 240 B.R. 15, 19 (Bankr. W.D. Mo. 1999) ("The general rule is that the court where the bankruptcy case is pending is the proper venue for all related proceedings within the court's jurisdiction."); In re Sudbury, 149 B.R. 489, 493 (Bankr. N.D. Ohio 1993) (same).

Beyond these considerations, the choice of section 1412 is practically compelled when one critically examines the analytical linchpin relied upon by the section 1404(a) courts in making their choice. Those courts pin their selection of section 1404(a) upon a comparison of section 1412 and what would, for a brief period, become 28 U.S.C. § 1475. Section 1475 was part of An Act to Establish a Uniform Law on the Subject of Bankruptcies,

otherwise known as the Bankruptcy Reform Act of 1978. See Pub. L. No. 95-598, § 1475, 92 Stat. 2549 (1978). The principal commentator nicely summarizes the abbreviated life span of section 1475 and related provisions:

> The jurisdictional provisions of the 1978 legislation were contained in sections 1471-1482 of title 28, United States Code, all of which were repealed by the 1984 legislation. Congress granted to the district courts "original and exclusive jurisdiction of all cases under title 11," and "original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11." These provisions are repeated verbatim in present 28 U.S.C. § 1334(a) and (b). However, section 1471(c) provided:
>
> > The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.
>
> Thus, all of the jurisdiction given to the Article III district court was to be exercised by the non-Article III bankruptcy court. The risk was taken that this flow-through jurisdiction would not pass constitutional muster. It was recognized, however, that a constitutional attack was likely and, shortly after enactment, it came.
>
> . . . .
>
> The constitutional concerns which had surrounded the 1978 legislation and its grant of encompassing jurisdiction to a nontenured bankruptcy court turned out to have been justified. Northern Pipeline Construction Co. v. Marathon Pipe Line Co., decided in 1982, was a breach of contract action filed in bankruptcy court by a debtor in possession. After the district court held that the statute was unconstitutional, a plurality of the Supreme Court

affirmed, holding that Section 241(a) of the Reform Act was unconstitutional, primarily on the ground that it violated the separation of powers underpinning of the Constitution:

> We conclude that § 241(a) of the Bankruptcy Act of 1978 has impermissibly removed most, if not all, of "the essential attributes of the judicial power" from the Art. III district court, and has vested those attributes in a non-Art. III adjunct. Such a grant of jurisdiction cannot be sustained as an exercise of Congress' power to create adjuncts to Art. III courts.

1 Collier supra ¶ 3.01(2)(b) & (2)(b)(I) (footnotes omitted).

Turning to the text of the now-repealed section 1475, one finds the following language:

> A bankruptcy court may transfer a case under title 11 or a proceeding <u>arising under or related to such a case</u> to a bankruptcy court for another district, in the interest of justice and for the convenience of the parties.

Pub. L. No. 95-598, § 1475, 92 Stat. 2549, 2670 (emphasis added).

As noted, section 1412, which was added in the wake of <u>Marathon</u> as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984, provides as follows:

> A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties.

28 U.S.C. § 1412.

10

The section 1404(a) courts have seized upon the deletion of the underscored language to support their view that section 1412 has no application to transfer of related-to actions. Specifically, they contend the omission was an effort by Congress to comply with Marathon. See, e.g., Searcy v. Knostman, 155 B.R. 699, 707 (S.D. Miss. 1993) ("The phrase 'related to such a case' is deleted from the current rendition of § 1412 which . . . evidences an intent by Congress to follow the pronouncements of the United States Supreme Court in the Marathon case to limit the authority of an Article I bankruptcy court.")

This analysis falters on close scrutiny. First, the view overlooks the fact that section 1475, in addition to explicitly allowing transfer of "related-to" proceedings, also treated the bankruptcy court as the transferor. Section 1412, on the other hand, switched transfer authority to the district court alone. If Congress was of a mind to comply with Marathon, this single step was sufficient. The question arises, then, as to why Congress took the second, and unnecessary, step to delete the underscored language. A textual analysis of section 1412, combined with a reading of another, general venue provision enacted the same day, resolves that question decisively.

11

Title 28 U.S.C. § 1409 is entitled "[v]enue of <u>proceedings</u> arising under title 11 or arising in or related to cases under title 11."[2]  28 U.S.C. § 1409 (emphasis added). Section 1409 was enacted along with section 1412 as a part of Public Law 98-353. Indeed, one looking in the Statutes at Large will note the provisions are separated by just three inches of statutory text relating, in part, to venue. Subdivision (a) provides as follows:

> (a) Except as otherwise provided in subsections (b) and (d), a <u>proceeding</u> arising under title 11 or arising in or <u>related to a case under title 11</u> may be commenced in the district court in which such case is pending.

28 U.S.C. § 1409(a). The word "proceeding" plainly modifies all of the phrase "arising under title 11 or arising in or related to a case under title 11 . . . ." Because section 1409(a) uses the term "proceeding" to include an action "related to a case under title 11[,]" it lends strong credence to the notion that the word "proceeding[,]" as used in section 1412, should be accorded the same breadth. If not, one is left to speculate what the term "proceeding" actually means in section 1412. Inasmuch as it appears in the statute books virtually on the heels of the general venue provision in section 1409, it may be concluded that

---

[2]This title appears as part of section 1409 in the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, § 1409, 98 Stat. 333 (Jul. 10, 1984). Interestingly, the title for section 1408 reads "Venue of <u>cases</u> under title 11." <u>Id.</u> § 1408.

the term "proceeding" did not require the additional elaboration accorded to it in section 1475.

Apart from this textual and contextual analysis though, the section 1404(a) courts overlook the significance of Congress' replacement of the bankruptcy court in former section 1475 with the district court as the transferor under section 1412. As noted, this step alone solved the Marathon problem. As a secondary matter though, if, as posited by the section 1404(a) courts, substantive effect should be given to the omission of the underscored language, Congress did far more than deprive bankruptcy courts of the authority to transfer related-to actions. It also deprived the new district court transferor of the same power, whether exercised under section 1412 or, most importantly, under section 1404(a) pursuant to the well-settled rule of expressio unius est exclusio alterius. This view, of course, would seem to defy common sense.

In view of these considerations, the court concludes that section 1412 is the appropriate statute for venue transfer purposes in this related-to action.

B.   Application of the Factoring Test

The movants do not specify whether they seek transfer

13

pursuant to the interest of justice or convenience prongs of section 1412. The court will first examine the interest of justice prong.

Due in large measure to the split of authority concerning the applicable transfer statute for related-to proceedings, a host of factors have been considered in determining whether to move related-to actions to the home court. One commentator collects the factors as follows:

> The district in which the bankruptcy case is pending is presumed to be the appropriate venue to preside over proceedings in the bankruptcy case.
>
> The factors applied by bankruptcy courts when deciding whether to transfer venue in matters . . . relating to a case under title 11 are often the same factors applied when deciding whether to transfer a bankruptcy case. [The "interest of justice" test involves the application of a broad and flexible standard that is applied on a case by case basis.
>
> The factors that are generally considered when applying this test are: 1. The proximity of creditors of every kind to the court[;] 2. The proximity of the debtor to the court[;] 3. The proximity of the witnesses necessary to the administration of the estate[;] 4. The location of the assets[;] and 5. The economical and efficient administration of the estate.
>
> The most important of these factors is the fifth factor, the economic and efficient administration of the estate. This factor is an amalgamation of the four preceding factors.]
>
> Other factors that have been applied are: 1. The presumption in favor of the home court; 2. The ability to receive a fair trial; 3. The state's interest in having local controversies decided within its borders, by those familiar with its law; 4. Enforceability of

14

>any judgment to be rendered; 5. Plaintiff's original choice of forum.

1 Howard J. Steinberg, <u>Bankruptcy Litigation</u> §§ 2:4, 2:6 (2005).

Regarding the proximity factors, a number of the thirty largest creditors of Friedman's, Inc. listed with its Chapter 11 petition, including Media Solutions, Alston & Bird LLP, and Dana Augustine, Inc., reside in Georgia. None reside in West Virginia. Further, Friedman's, Inc. is a Georgia corporation, with its principal place of business in Savannah. Witness proximity also favors the Georgia forum in one very significant respect. The class and related actions will focus on corporate decision making. Georgia was the nerve center for those decisions.

While there is little doubt that many West Virginia witnesses will be called to testify as well, the second amended complaint defines the class as "all consumers who purchased jewelry and/or other consumer goods from Defendant Friedman's in the State of West Virginia at any time within four years prior to the filing of this civil action . . . ." (Sec. Am. Compl. ¶ 82.) This definition encompasses not only current West Virginia residents, but also those former residents who made purchases from Friedman's, Inc., along with those from out of state who made a purchase during their stay.

15

Regarding the assets, the majority of the corporate holdings are "located in and around" Savannah, Georgia. (Movs.' Memo. in Supp. at 8.) Even treating the witness proximity factor as neutral, the foregoing considerations weigh significantly in favor of transfer. In sum, a transfer to the Georgia bankruptcy court will best facilitate the economical and efficient administration of the estate.

Looking to the remaining factors, there is no indication plaintiff will forfeit his or the class' right to a fair trial. Should the action proceed past the pretrial stage, the parties may either consent to a jury trial before the bankruptcy court or move for withdrawal of reference as appropriate to assure compliance with the Seventh Amendment and the seating of an impartial body to hear the case. Regarding the state's interest, West Virginia certainly has a stake in the fair and efficient outcome of this action, where it is alleged a number of its residents were victimized by Friedman's, Inc. and its agents. The court notes, however, that, in partial discharge of this interest, the Attorney General of West Virginia secured injunctive relief in 1999 against Friedman's, Inc. under the state's insurance laws and the West Virginia Consumer Credit and Protection Act. (Sec. Am. Compl. ¶¶ 59-60.) Regarding the

16

remaining factors, plaintiff's original forum choice was West Virginia, but there is no indication that any judgment obtained in Georgia would lack enforceability here.

Coalescing these factors together, one is struck by two preeminent considerations, namely the home court's presumptive suitability and that transfer will facilitate the economical and efficient administration of the estate. Inasmuch as these two important considerations decidedly favor the movants' position, the court ORDERS that the motion for transfer be, and it hereby is, granted. The court further ORDERS that this civil action be, and it hereby is, transferred to the United States District Court for the Southern District of Georgia.[3]

---

[3] In view of this disposition, the court need not consider the convenience prong of section 1412.
   The court also notes the recent transfer of a similar action pending in the United States District Court for the Southern District of Mississippi. See Everett v. Friedman's Inc., No. 4:05-32LN, slip op. at 5 (S.D. Miss. Aug. 12, 2005) (stating "[T]his court is persuaded that the case should be transferred to the "home" bankruptcy court . . . . [I]f this case is to remain in federal court on account of Friedman's[] bankruptcy, the most appropriate venue would be in the Georgia Bankruptcy Court, the location of Friedman's[] bankruptcy case.").

III.

Based upon the foregoing discussion, the court ORDERS as follows:

1.  That plaintiff's motion for leave to file a pleading and memorandum in response to the movants' supplemental memorandum in support of the transfer motion be, and it hereby is, granted;

2.  That movants' motion to strike be, and it hereby is, denied;

3.  That movants' motion to transfer be, and it hereby is, granted; and

4.  That movants' motion for relief from the court's preliminary scheduling order be, and it hereby is, denied as moot.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

DATED:   September 30, 2005

John T. Copenhaver, Jr.
United States District Judge

A TRUE COPY CERTIFIED ON

SEP 3 0 2005

TERESA L. DEPPNER, CLERK
U.S. District & Bankruptcy Courts
Southern District of West Virginia
By _____ Deputy

18