# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Savannah Division

In the matter of:                                )
                                                 )
FRIEDMAN'S, INC., et al.,                        )
(Chapter 11 Case Number 05-40129)                )
                                                 )
       *Debtors*                               )
                                                 )
                                                 )
                                                 )
JAMES DUNLAP, on behalf of                       )
himself and others similarly situated            )
                                                 )
       *Plaintiffs*                            )
                                                 )
v.                                               )
                                                 )
FRIEDMAN'S, INC., d/b/a Friedman's               )
Jewelers, a Delaware Corporation,                )
AMERICAN BANKERS INSURANCE                       )
COMPANY OF FLORIDA, INC.,                        )
AMERICAN BANKERS LIFE                            )
ASSURANCE COMPANY OF                             )
FLORIDA, et al.,                                 )
                                                 )
       *Defendants*                            )

Adversary Proceeding

Number 06-4049

**F I L E D**
at 4 O'clock & 15 min P M
Date 3/16/07

Samuel L. Kay, Clerk
United States Bankruptcy Court
Savannah, Georgia

## MEMORANDUM AND ORDER
## ON THE MOTION OF AMERICAN BANKERS
## INSURANCE COMPANY OF FLORIDA, INC., AND
## AMERICAN BANKERS LIFE ASSURANCE COMPANY
## OF FLORIDA TO DECERTIFY THE DUNLAP CLASS

On May 8, 2006, Defendants American Bankers Insurance Company of

Florida, Inc. and American Bankers Life Assurance Company of Florida (collectively,

"ABI") moved to decertify the class action (hereinafter, the "Dunlap Class") represented by Plaintiff James Dunlap ("Dunlap"). *See* Dckt. No. 21 (May 8, 2006). In response, Dunlap filed a motion and brief in opposition to ABI's motion. *See* Dckt. No. 30 (May 8, 2006). ABI responded with a reply brief in support of its motion to decertify. *See* Dckt. No. 39 (May 8, 2006). By stipulation, this Court did not conduct a hearing but received documents from the respective parties that were filed on November 9, 2006.[1]  *See* Dckt. No. 51 (November 9, 2006)(ABI's submission); Dckt. No. 54 (November 9, 2006)(Dunlap's submission). In reliance upon that record and applicable law, I make the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

This case has a long history that includes litigation in both the state and federal courts of West Virginia, resulting in the publication of several decisions that outline in detail the facts. *See* Friedman's, Inc. v. Dunlap, 290 F.3d 191 (4th Cir. 2002); Dunlap v. Friedman's, Inc., 331 B.R. 674 (S.D.W. Va. 2005); Dunlap v. Friedman's, Inc., 213 W. Va. 394, 582 S.E.2d 841 (2003); State ex rel. Dunlap v. Berger, 211 W. Va. 549, 567 S.E.2d 265 (2002). To summarize, on May 4, 2000, Dunlap filed an action in the Circuit Court of Kanawha County, West Virginia against the Debtors, ABI, and various individuals.[2]  *See*

---

[1] Since September 2006, the Court conducted informal conferences with the parties in order to obtain the relevant record and determine whether any party requested a hearing on ABI's motion.

[2] Dunlap's action came several days after the settlement of a civil enforcement action with the West Virginia Attorney General. In October 1999, the West Virginia Attorney General sued the Debtors for the same or similar conduct alleged by Dunlap, which resulted in the settlement agreement. *See* Dckt. No. 51, Ex. A (November 9, 2006). Under that agreement, the Debtors paid a little more than $90,000 in compensatory damages to 1,720 West Virginia customers. Id., Ex. B. Neither the terms of that agreement nor West Virginia law

Dckt. No. 51, Ex. C (November 9, 2006). In his Second Amended Complaint, Dunlap sought money damages and equitable relief pursuant to the West Virginia Consumer Credit and Protection Act (the "West Virginia Consumer Protection Act"), West Virginia insurance laws, the Uniform Commercial Code, and applicable state common law theories of liability. *See* Id., Ex. D. Dunlap alleged that the Debtors, *inter alia*, employed a comprehensive scheme to charge its West Virginia customers for various credit insurance products without their knowledge or consent. Id., Ex. D, p. 2. To support this allegation, Dunlap filed several affidavits from former customers and employees of the Debtors. Because the Debtors purchased these credit insurance products from ABI, Dunlap alleged that ABI engaged in a joint venture with the Debtors and aided and abetted the Debtors' attempts to charge hidden fees and costs to their West Virginia customers. Id., Ex. D, p. 10.

On February 10, 2004, Circuit Court Judge Irene Berger conditionally certified the Dunlap Class pursuant to the requirements of West Virginia Rule of Civil Procedure 23. *See* Dckt. No. 51, Ex. I (November 9, 2006). Judge Berger's order granting conditional certification defined the Dunlap Class to include:

> [A]ll consumers who purchased jewelry and/or other consumer goods from Defendant Friedman's in the State of West Virginia at any time within four years prior to the filing of this civil action to the present who also satisfy the following criteria: (a) their sales contract and/or retail installment sales contract contained a charge for credit life,

---

precluded further civil action by consumers against the Debtors. *See* W. Vᴀ. Cᴏᴅᴇ § 46A-7-113.

credit disability and/or property insurance; and (b) they have not previously filed an individual civil action alleging misconduct arising out of the same consumer transaction.

Id., Ex. I, p. 2.

Judge Berger concluded that Dunlap had standing to bring the action and that the Dunlap Class satisfied the requirements of Rule 23(a) of the West Virginia Rules of Civil Procedure.[3] First, even excluding the 1,720 consumers who executed the release stemming from the settlement of the West Virginia Attorney General's action against the Debtors, Judge Berger concluded that the potential size of the Dunlap Class was so numerous that joinder of all members was impracticable. Id., Ex. I, p. 3. Second, after determining that a nucleus of operative fact was common to the entire class, she concluded that the Dunlap Class satisfied the commonality requirement. Id. Third, after determining that Dunlap encountered the same practice or course of conduct with the Debtors upon which the class claims were based, she concluded that the Dunlap Class satisfied the typicality requirement despite some differences among the class members' individual encounters with the Debtors. Id., Ex. I, p. 4-5. Finally, after determining that Dunlap had retained qualified and experienced counsel and that his interests did not conflict with those of the class, she concluded that Dunlap would fairly and adequately represent the interests of the Dunlap Class. Id., Ex. I, p. 5.

---

[3] In West Virginia state courts, "[one] or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." W. VA. R. CIV. P. 23(a).

In addition, Judge Berger concluded that the Dunlap Class satisfied both Rules 23(b)(1)(A) and 23(b)(2). The Dunlap Class satisfied the requirements of Rule 23(b)(1)(A)[4] because separate actions by individual members of the class would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the Defendants. Id., Ex. I, p. 6. Because the Dunlap Class sought both injunctive and declaratory relief against the Defendants based on their alleged violations of the West Virginia Consumer Protection Act, the Dunlap Class also satisfied the requirements of Rule 23(b)(2).[5] Id., Ex. I, p. 6-7. There is no mention of Rule 23(b)(3)[6] in Judge Berger's order.

On January 14, 2005, the Debtors filed their Chapter 11 petition in this Court, and Dunlap filed a proof of claim in the case on behalf of the Dunlap Class. Invoking "related to" federal bankruptcy jurisdiction pursuant to 28 U.S.C. § 157, ABI subsequently removed the entire action against it and the Debtors to the United States District Court for the Southern District of West Virginia. On September 30, 2005, upon the motion of ABI, Judge John T. Copenhaver, Jr. transferred the entire action to the United States District Court

---

[4] "An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: (1) The prosecution of separate actions by or against individual members of the class would create a risk of (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class." W. VA. R. CIV. P. 23(b)(1)(A).

[5] "An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: (2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." W. VA. R. CIV. P. 23(b)(2).

[6] "An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: (3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." W. VA. R. CIV. P. 23(b)(3).

for the Southern District of Georgia. <u>Dunlap v. Friedman's, Inc.</u>, 331 B.R. 674 (S.D.W. Va. 2005). After the case was transferred to Georgia, upon the motion of Dunlap, Judge B. Avant Edenfield referred the case to this Court. *See* Dckt. No. 41 (May 8, 2006). In his order referring the case to this Court, Judge Edenfield denied ABI's motion to decertify the Dunlap Class as moot with leave to refile. It is that refiled motion that is now before this Court. *See* Dckt. No. 42 (June 9, 2006).

## CONCLUSIONS OF LAW

In contending that this Court should decertify the Dunlap Class, ABI raises four arguments. *See* Dckt. No. 22 (May 8, 2006). First, Dunlap lacks standing to represent the Dunlap Class. Second, the definition of the Dunlap Class is overly broad and irreparably defective. Third, the Dunlap Class does not satisfy the requirements of Federal Rule of Civil Procedure 23(a).[7] Fourth, the Dunlap Class does not meet the requirements of class actions permitted under Federal Rules of Civil Procedure 23(b)(1)(A) and 23(b)(2). Because it underlies the sole basis for my decision, ABI's final argument is the only one that I will address.

---

[7] Judge Berger certified the Dunlap Class pursuant to the West Virginia Rules of Civil Procedure. As an adjunct of the District Court, this Court is required to apply federal statutes or rules of procedure when they cover a disputed issue. *See* Esfeld v. Costa Crociere, S.P.A., 289 F.3d 1300, 1307 (11th Cir. 2002)(citing Hanna v. Plumer, 380 U.S. 460, 471, 85 S. Ct. 1136, 1144, 14 L.Ed.2d 8 (1965)). Therefore, I must apply the Federal Rules of Civil Procedure and accompanying caselaw to rule on ABI's motion to decertify the Dunlap Class. *See* Morgan v. Markerdowne Corp., 201 F.R.D. 341, 345-46 (D.N.J. 2001)(reviewing a class action conditionally certified by a state court pursuant to Federal Rule of Civil Procedure 23); In re Bridgestone/Firestone, Inc., ATX, ATX II and Wilderness Tires Products Liab. Litig., 2001 WL 34136016, *3 (S.D. Ind. 2001)("[I]n this federal court, Federal Rule of Civil Procedure 23 displaces any state law to the contrary, and provides the only relevant framework for this Court's determination of the nature and scope of any Class(es) on whose behalf Plaintiffs may assert MCPA and TCPA claims.").

*I.*

As a preliminary matter, Dunlap challenges my authority to even consider ABI's motion to decertify.  Dunlap contends that ABI's motion to decertify the Dunlap Class offends the law of the case doctrine.  *See* Dckt. No. 30, p. 2 (May 8, 2006).  In addition, because no new, material evidence has been presented to this Court, departing from the law of the case doctrine in this matter is unwarranted.  Id.

In the Eleventh Circuit, the leading decision concerning the law of the case doctrine is White v. Murtha, 377 F.2d 428 (11th Cir. 1967).  According to that decision, the law of the case doctrine:

> is based on the salutary and sound public policy that litigation should come to an end.  It is predicated on the premise that "there would be no end to a suit if every obstinate litigant could, by repeated appeals, compel a court to listen to criticisms on their opinions or speculate of chances from changes in its members," and that it would be impossible for an appellate court "to perform its duties satisfactorily and efficiently" and expeditiously "if a question, once considered and decided by it were to be litigated anew in the same case upon any and every subsequent appeal" thereof.

> Id. at 431.

The law of the case doctrine is a judicially created doctrine that is designed to achieve several important goals, including (1) ensuring an end to litigation; (2) discouraging "panel shopping"; and (3) assuring the obedience of lower courts.  Burger King Corp. v. Pilgrim's

Pride Corp., 15 F.3d 166, 169 (11th Cir. 1994). The doctrine is not, however, an inexorable command. White, 377 F.2d at 431. For example, the law of the case doctrine does not prevent courts from revisiting matters that are "avowedly preliminary or tentative." Council of Alternative Political Parties v. Hooks, 179 F.3d 64, 69 (3d Cir. 1999); *see also* Homans v. City of Albuquerque, 366 F.3d 900, 905 (10th Cir. 2004).

This Court is not an appellate court sitting in review of Judge Berger's order conditionally certifying the Dunlap Class. However, Federal Rule of Civil Procedure 23(c)(1)(C) states that an "order under Rule 23(c)(1) may be altered or amended before final judgment." FED. R. CIV. P. 23(c)(1)(C). The "order" referenced in Rule 23(c)(1)(C) is a court's order certifying a class action, as referenced in Rules 23(c)(1)(A) and 23(c)(1)(B). In this case, Judge Berger's order certifying the Dunlap Class is subject to modification at any time prior to final judgment, notwithstanding any concepts relating to the law of the case doctrine.

This holding is supported by the case of Prado-Steiman v. Bush, 221 F.3d 1266 (11th Cir. 2000). There, the Eleventh Circuit Court of Appeals addressed the circumstances under which it would grant an interlocutory appeal under Rule 23(f) to review a class certification decision. The court concluded that the interlocutory appeal of a class certification decision should be granted when there is a "compelling need for resolution of the legal issue sooner rather than later." Id. at 1274. Relevant to this Court's decision in the present matter, the Eleventh Circuit stated that interlocutory appeals of class certification

decisions should not "short-circuit" a district court's ability to reconsider its certification decision. Id. at 1273. A district court's ability to revisit a certification decision comes from Rule 23(c)(1), which the Eleventh Circuit found to "specifically empower[] district courts to alter or amend class certification orders at *any* time prior to a decision on the merits." Id. at 1273. In other words, class certification decisions "are not final judgments impervious to lower court review and revision." Id.

Pursuant to this authority, I conclude that I may revisit the order certifying the Dunlap Class at any time. I acknowledge the deference and respect owed to Judge Berger's decision. That acknowledgment aside, however, ABI has questioned the suitability of the Dunlap Class under Rule 23, and I cannot abdicate my responsibilities under the Federal Rules of Civil Procedure, which are issued by the United States Supreme Court pursuant to the rule-making powers delegated by Congress. The fact that a state court rendered the class certification order in 2004 does not curtail this Court's authority to reassess this matter today under Rule 23(c)(1)(C).

## II.

Turning to the merits of its motion to decertify, ABI claims that the Dunlap Class is improperly certified pursuant to Federal Rules of Civil Procedure 23(b)(1)(A) and 23(b)(2). ABI contends that certification under Rule 23(b)(1)(A) is reserved for those circumstances where varying adjudications would create a risk of inconsistent standards of conduct for the party opposing the class. *See* Dckt. No. 22, pgs. 21-23 (May 8, 2006). Such

circumstances, ABI asserts, do not exist in this case. Furthermore, ABI argues that the requirements of Rule 23(b)(2) are not met in this case because although the Dunlap Class seeks primarily monetary damages, certification under Rule 23(b)(2) is reserved for those claimants seeking injunctive or declaratory relief. Id., pgs. 23-25.

Naturally, Dunlap disagrees with ABI's arguments. As to certification under Rule 23(b)(1)(A), Dunlap states that because the Defendants' conduct in each individual case is essentially the same, there exists the potential for inconsistent adjudications that would create incompatible standards of conduct for the Defendants if the cases were tried separately. *See* Dckt. No. 30, p. 24 (May 8, 2006). As to certification under Rule 23(b)(2), Dunlap points out that he does seek injunctive and declaratory relief, as well as monetary relief, from the Defendants. Id., p. 25. As a result, certification remains permissible under Rule 23(b)(2).

### A. Rule 23(b)(1)(A)

Under Rule 23(b)(1)(A):

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: (1) The prosecution of separate actions by or against individual members of the class would create a risk of (A) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class.

FED. R. CIV. P. 23(b)(1)(A).

The party moving for class certification must demonstrate that, in the absence of the class action, there is a substantial risk that separate actions involving the same subject matter will be brought. The moving party must also show that the separate actions are likely to result in inconsistent or varying adjudications that will impose incompatible standards of conduct on the party opposing the class. 5 *Moore's Federal Practice*, § 23.41[3][a] (Matthew Bender 3d ed.).

The majority position among the federal courts is that actions seeking primarily compensatory damages should not be certified pursuant to Rule 23(b)(1)(A). *See, e.g.*, Zimmerman v. Bell, 800 F.2d 386, 389 (4th Cir. 1986)("The danger of imposing incompatible standards of conduct on the party opposing the class is also not normally posed by a request for money damages.")(quotations omitted). In In re Dennis Greenman Sec. Litig., 829 F.2d 1539, 1545 (11th Cir. 1987), the Eleventh Circuit Court of Appeals recognized that the rationale underlying the majority position stemmed from the generally held belief that defendants are not held to incompatible standards of conduct simply because they may be liable to some plaintiffs but not to others. The court expressed its "concern that if compensatory damage actions can be certified under Rule 23(b)(1)(A), then all actions could be certified under the section, thereby making the other sub-sections of Rule 23 meaningless, particularly Rule 23(b)(3)." Id. After reviewing the accompanying Advisory Committee Notes, the court concluded, "albeit reluctantly," that actions for compensatory damages may not be certified pursuant to Rule 23(b)(1)(A). Id.

Some courts have permitted Rule 23(b)(1)(A) certification in cases where the putative class seeks a mix of both injunctive or declaratory relief *and* monetary damages. *See, e.g.*, Robertson v. Nat'l Basketball Ass'n, 556 F.2d 682, 685 (2d Cir. 1977)(finding certification under Rule 23(b)(1) to be "plainly proper" where the relief sought includes not only damages but also equitable relief); *cf.* Harrington v. City of Albuquerque, 222 F.R.D. 505, 516 (D.N.M. 2004)("Certification pursuant to Rule 23(b)(1)(A) is generally not appropriate in cases in which the *primary* relief sought is monetary damages.")(emphasis added).   Because the plaintiffs in Greenman sought relief only in the form of monetary damages, the Eleventh Circuit arguably left this issue unresolved until its decision in Cohen v. Office Depot, Inc., 204 F.3d 1069 (11th Cir. 2000).   On behalf of a proposed nationwide class, the plaintiff in Cohen alleged that the defendant had engaged in deceptive advertising and sought relief including compensatory damages, punitive damages, an injunction prohibiting deceptive advertising, attorneys' fees, and costs.[8]   While the initial focus of its opinion was whether the punitive damages sought by the plaintiff satisfied the amount-in-controversy requirement for federal diversity jurisdiction, the Eleventh Circuit also analyzed the injunctive relief aspects in relation to the amount-in-controversy requirement.   In the context of a case in which the plaintiff sought both monetary and injunctive relief, it held that "[b]ecause Cohen's class seeks compensatory damages, it cannot be certified as a (b)(1)(A) class."   Id. at 1078 n.7.   As a result of the Eleventh Circuit's decisions in Greenman and Cohen, I conclude that Rule 23(b)(1)(A) certification is improper whenever a putative class

---

[8] The Eleventh Circuit provided greater detail of the history of this case in a prior opinion. *See* Cohen v. Office Depot, Inc., 184 F.3d 1292 (11th Cir. 1999).

AO 72A
(Rev. 8/82)

seeks monetary damages.[9]

Dunlap's Second Amended Complaint requested relief in the form of an injunction against the Defendants ordering them to stop their unlawful activities and revise their sale procedures, and it also requested a variety of monetary damages. For each member of the putative class, Dunlap requested actual damages of at least $200.00, a statutory penalty of at least $100.00, damages for emotional and mental distress, consequential and incidental damages, punitive damages, attorneys' fees and costs, and pre- and post-judgment interest. *See* Dckt. No. 51, Ex. D, pgs. 19-20 (November 9, 2006). Because the Dunlap Class's request for monetary damages disqualifies it, based on my interpretation of the Eleventh Circuit's decisions in Greenman and Cohen concerning Rule 23(b)(1)(A) class certification, and because the monetary relief requested predominates over the injunctive and declaratory relief requested, I conclude that the Dunlap Class may not be certified pursuant to Rule 23(b)(1)(A).

---

[9] Alternatively, even if the proper standard for Rule 23(b)(1)(A) certification is whether the monetary relief requested is merely incidental to the injunctive and declaratory relief requested, I hold for reasons set forth *infra* that the monetary relief sought by Dunlap predominates. Therefore, the incidental relief exception does not apply here. Furthermore, the limited fund exception applied by some courts is not applicable here. Under that exception, class certification may be permitted in monetary damage cases where there is a limited fund subject to the claims of multiple parties and where an adjudication of entitlement to the fund may make it impossible for the defendant fund-holder to comply with each separate ruling. *See* Berman v. Narragansett Racing Ass'n, Inc., 48 F.R.D. 333 (D.R.I. 1969)(granting class certification where the prosecution of individual cases created a risk that the defendant would have to comply with inconsistent orders relating to the distribution of judgments from a limited fund). That scenario cannot arise here because any recovery by members of the Dunlap Class is subject to the terms of Friedman's confirmed plan of reorganization. *See* Case No. 05-40129, Dckt. No. 1338 (November 23, 2005). Under that plan, any allowed unsecured claim is classified as a Class 5 claim, and creditors with Class 5 claims will be paid pro-rata from the Friedman's Creditor Trust. Any judgment obtained by members of the Dunlap Class against Friedman's will be included in Class 5. Because Class 5 creditors will share pro-rata in the fund, there is no chance that individual judgments obtained by Dunlap and other consumers could possibly subject Friedman's to inconsistent standards as to how to administer that fund.

### B.  Rule 23(b)(2)

Under Rule 23(b)(2):

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: (2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

FED. R. CIV. P. 23(b)(2).

A class may be certified under this provision if injunctive or declaratory relief would be appropriate for the entire class because a party's action or inaction affects the entire class. 5 *Moore's Federal Practice*, § 23.43[1][a] (Matthew Bender 3d ed.).  By the express terms of Rule 23(b)(2), parties seeking to certify class actions under this provision must request final injunctive or declaratory relief. McGlothlin v. Connors, 142 F.R.D. 626, 640 (W.D. Va. 1992).

In most cases, certification under Rule 23(b)(2) is improper if the primary relief sought by the action is monetary damages.  *See* Jefferson v. Ingersoll Int'l Inc., 195 F.3d 894, 898 (7th Cir. 1999)("If Rule 23(b)(2) ever may be used when the plaintiff class demands compensatory or punitive damages, that step would be permissible only when monetary relief is incidental to the equitable remedy."); Rota v. Bhd. of Ry., Airline and S.S. Clerks, 64 F.R.D. 699, 707 (N.D. Ill. 1974)("Thus, [Rule 23(b)(2)] was not intended to apply where the appropriate final relief relates exclusively or predominantly to money damages.").

The Eleventh Circuit Court of Appeals echoed similar sentiments in <u>Murray v. Auslander,</u> 244 F.3d 807 (11th Cir. 2001), where the court stated that a class action under Rule 23(b)(2) may be obtained "so long as the predominant relief sought is injunctive or declaratory." <u>Id.</u> at 812. Monetary relief is not predominant if it is "incidental" to the requested injunctive or declaratory relief. Quoting <u>Allison v. Citgo Petroleum Corp.</u>, 151 F.3d 402, 415 (5th Cir. 1998), the court summed up its determination of when monetary relief is "incidental" in the following way:

> By incidental, we mean damages that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief. Ideally, incidental damages should be only those to which class members automatically would be entitled once liability to the class (or subclass) as a whole is established. Liability for incidental damages should not entail complex individualized determinations. Thus, incidental damages will, by definition, be more in the nature of a group remedy, consistent with the forms of relief intended for (b)(2) class actions.

> <u>Murray</u>, 244 F.3d at 812.

Dunlap's Second Amended Complaint seeks a declaratory judgment declaring the Defendants' alleged actions to have violated the West Virginia Consumer Protection Act. *See* Dckt. No. 51, Ex. D (November 9, 2006). It also seeks injunctions requiring that (1) the Defendants cease all unlawful acts alleged in the Second Amended Complaint, (2) Friedman's train its employees in West Virginia consumer protection rights and law, (3) Friedman's revise its sales procedures to be consistent with the law, and (4) the

Defendants cancel all debt and refund all funds held as a result of the Defendants' alleged wrongdoing.

However, while Dunlap sought injunctive and declaratory relief in his Second Amended Complaint, as described *supra*, he also sought multiple elements of monetary damages, including the greater of actual damages or $200.00, statutory penalties of at least $100.00, damages for mental and emotional distress, consequential and incidental damages, punitive damages, costs and attorneys' fees, and pre- and post-judgment interest. Other than the statutory damages and possibly the interest, Dunlap's requested damages do not flow directly from an adjudication of liability but must be proven and calculated on an individual basis. As the magnitude of individualized elements of damage far exceed the statutory ones, they are not incidental to but predominate over Dunlap's requests for injunctive and declaratory relief. *See* Murray, 244 F.3d at 812 ("Thus, it appears that Plaintiffs seek damages [for individual pain and suffering, mental anguish, and humiliation] to which they would not be automatically entitled even if Defendants' liability to the class is established. Moreover, assessing damages for these inherently individual injuries compels an inquiry into each class member's individual circumstances."). Because monetary relief is the predominant form of relief sought, as defined by the Eleventh Circuit in Murray, I conclude that the Dunlap Class is not suitable or appropriate for class certification under Rule 23(b)(2).

This conclusion is even more compelling in light of the fact that Dunlap's

requests for declaratory and injunctive relief with regards to Friedman's are moot.  In its Agreed Order with the West Virginia Attorney General, Friedman's agreed to take a variety of corrective and remedial actions.  *See* Dckt. No. 51, Ex. B (November 9, 2006). Friedman's agreed that its employees and agents would comply with the provisions of the West Virginia Consumer Protection Act.  Id., Ex. B, p. 4.  Friedman's would take the necessary steps to insure (1) that its employees and agents would not sell credit life and property damage insurance without the proper insurance licenses; (2) that its employees and agents would orally ask each consumer whether he or she wished to purchase insurance; (3) that it would refrain from charging its consumers for insurance until the consumer knowingly and willingly consented to such charge; (4) that it would not advertise in a false or deceptive manner; and (5) that it would clearly and conspicuously disclose any and all charges in its contracts with its consumers.  Id., Ex. B, pgs. 4-6.  Friedman's agreed to compile a list for the Attorney General of all consumers who purchased insurance from Friedman's and the amounts they paid.  Id., Ex. B, p. 6.  Friedman's agreed to give all listed consumers the option of canceling their purchase of insurance, and those that desired such a cancellation would receive a refund from Friedman's.  Id.  All information concerning these cancellations and their refunds would be reported to the Attorney General, as well.  Id., Ex. B, p. 7. Finally, the West Virginia court retained jurisdiction to enforce the terms of the settlement. Id., Ex. B, p. 9.

As a result of this settlement, the declaratory or injunctive relief that Dunlap seeks has already been implemented and in place for nearly seven years, and the jurisdiction

to enforce it has been reserved by the court that imposed that relief. Dunlap has not produced any evidence to demonstrate that Friedman's has violated its agreement with the West Virginia Attorney General such that injunctive or declaratory relief in this forum is necessary to deter present or future wrongful conduct. Co-defendant ABI had no direct contact with consumers. Rather, Friedman's acted as a conduit for the placement of all insurance coverage underwritten by ABI, and Dunlap has produced no evidence to the contrary. Accordingly, the injunctive relief imposed on Friedman's moots any necessity of further injunctive relief against ABI. Therefore, I conclude that the Dunlap Class does not meet the requirements for class certification under Rule 23(b)(2).

### C. Rule 23(b)(3)

In responding to ABI's arguments concerning class certification under Rules 23(b)(1)(A) and 23(b)(2), Dunlap made the alternative request that this Court certify the Dunlap Class pursuant to Rule 23(b)(3).[10]  *See* Dckt. No. 30, pgs. 24, 26 (May 8, 2006). Under Rule 23(b)(3), a class may be certified if common questions of law or fact predominate over questions affecting individual class members, and the class action is the superior method for resolving the controversy. FED. R. CIV. P. 23(b)(3). The party moving for class certification must meet a "far more demanding" standard to demonstrate predominance than is required to satisfy Rule 23(a)'s commonality requirement. Rutstein v. Avis Rent-a-Car Sys., Inc., 211 F.3d 1228, 1233-34 (11th Cir. 2000). It is well-established

---

[10] In effect, this was a renewal of Dunlap's original request for Rule 23(b)(3) certification, which Judge Berger did not address in her order.

in the Eleventh Circuit that the party seeking class certification carries the burden of demonstrating that the requirements of Rule 23 are satisfied. *See* <u>Valley Drug Co. v. Geneva Pharm., Inc.</u>, 350 F.3d 1181, 1187 (11th Cir. 2003)("The burden of proof to establish the propriety of class certification rests with the advocate of the class."); <u>Rutstein</u>, 211 F.3d at 1233. Here, Dunlap has failed to point to any evidence in the record that demonstrates that the issues common to the Dunlap Class predominate over individual issues. Dckt. No. 30, p. 24 (May 8, 2006). His citation of Rule 23(b)(3) and mere assertion that the Dunlap Class satisfies its requirements, without more, does not satisfy his burden as required in the Eleventh Circuit. *See* <u>Valley Drug</u>, 350 F.3d at 1196 ("[Under] Rule 23[,] it is the plaintiffs, as the moving party, who bear the burden of proving that class certification is appropriate because class actions are not an automatic entitlement under our rules of civil procedure.").

Furthermore, in addition to the absence of any affirmative evidence advanced by Dunlap to show how the Rule 23(b)(3) burden is met here, my review of the record fails to uncover sufficient evidence to satisfy that burden. Dunlap focuses on the commonality to the members of the Dunlap Class of Friedman's implementation of a scheme or a pattern and practice in West Virginia to sell insurance to its customers without their knowledge or consent that did not vary materially from location to location or employee to employee. ABI has focused on the individualized manner in which the scheme may have been implemented and in which customers may have been injured.

The record shows that there were variations with respect to how the alleged

scheme was implemented.  For example, in her affidavit, Jeannie Spangler stated that as a store manager, she was required to sell insurance policies and that she had to sell insurance on 85% of all financed purchases.[11]  *See* Dckt. No. 51, Ex. D, Attch. D-1 (November 9, 2006).  However, the affidavit does not establish that she was told that she had to conceal the sales from the customers.  She further stated that she, in fact, revealed to her customers the existence of the insurance on their contracts while some of her personnel did not.  In her affidavit, Ida Campbell (a store manager) stated that she was told to not disclose the existence of the insurance. *See* Id., Ex. D, Attch. D-2.  Because she did not feel comfortable following this procedure, she routinely informed customers of the insurance and deleted the charges if the customers so requested.  As a sales associate, Stella Lively's affidavit establishes that insurance was automatically included by Friedman's computers on customers' sales contracts. *See* Id., Ex. D, Attch. D-3.  In her affidavit, Katheryn Lopez (a sales associate) stated that she was instructed to add the insurance and not to disclose it. *See* Id., Ex. D, Attch. D-4.  However, she "never did what they asked me to do" and that "[e]very time I made a sale, I offered the customer the choice of purchasing insurance." *See* Id.  Similarly, the Darlene Hedgecock (a sales associate) affidavit outlines similar instructions, but she always offered the insurance and allowed the customers to make the decision whether to purchase the insurance. *See* Id., Ex. D, Attch. D-5.

From this record, I conclude that Dunlap has not established that Friedman's

---

[11] In a letter to Ida Campbell, Friedman's clearly referenced this 85% quota. *See* Dckt. No. 51, Ex. D, Attch. F (November 9, 2006).

operated a scheme that did not vary materially from customer to customer. While an effort was apparent at the corporate or upper-level management to induce sales staff to sell and not disclose insurance, the on-site sales associates and personnel did not, in fact, follow through on their instructions. In fact, many of them disclosed the existence of the insurance and gave their customers an option to decline. For those who failed to disclose the insurance charges, there were different methods employed to deceive the customer. In his own case, Dunlap stated that during a sales transaction at Friedman's, the sales associate placed his hand over a portion of the sales contract so that at the moment he signed, he was unaware of the charges. *See* Id., Ex. F, p. 14 (Dunlap deposition). Judith Hudnall had every opportunity, however, to see the charges at the moment of signing her papers. *See* Id., Ex. D, Attch. C-1. Although she signed the contract, which showed the charges, the certificates of insurance were folded and placed in an envelope that had "Terms of Contract" written on the outside. The outside of the envelope itself did not reveal any insurance charges. It was only when she opened the envelope that she discovered insurance certificates and learned that she had been charged for insurance. Id. It is clear that not every customer was deceived as to the existence of the insurance charges. Furthermore, as to those who actually were deceived, Dunlap has failed to produce any evidence that demonstrates that they were deceived through uniform misrepresentations or practices.

Taken as a whole, this evidence fails to meet Dunlap's burden of proof for Rule 23(b)(3) certification. In a consumer fraud case, the Eleventh Circuit requires that the alleged scheme or misrepresentation be presented to all or a substantial number of the class

members in the same way.  In <u>Andrews v. American Tel. & Tel. Co.</u>, 95 F.3d 1014 (11th Cir. 1996), the court reviewed two classes certified under Rule 23(b)(3) alleging violations of various federal and state laws arising from the advertising and use of numerous "900-number" telemarketing programs.  The court reversed a district court order certifying the classes.  In the first class action, the court stated that, at a general level, while the predominant issue was whether the defendants were involved in illegal gambling schemes that used 900-numbers, "as a practical matter, the resolution of this overarching common issue breaks down into an unmanageable variety of individual legal and factual issues." <u>Id.</u> at 1023.  As to the second class action, the court concluded that even "if it could be shown that the appellants were engaged in a scheme to defraud and made misrepresentations to further that scheme, the plaintiffs would still have to show, on an individual basis, that they relied on the misrepresentations, suffered injury as a result, and incurred a demonstrable amount of damages." <u>Id.</u> at 1025.

In <u>Sikes v. Teleline, Inc.</u>, 281 F.3d 1350 (11th Cir. 2002), the Eleventh Circuit confronted a class action certified under Rule 23(b)(3) that made similar allegations as the class actions in <u>Andrews</u>.  Unlike the claimants in <u>Andrews</u>, the class action in <u>Sikes</u> challenged the advertising and use of only one 900-number program.  The court still held, however, that the district court order certifying the class under Rule 23(b)(3) would be reversed.  In addition to finding that reliance could not be presumed in the case, the court concluded that each class member was the only person with information about the content of the advertisements for the 900-number upon which he or she relied. <u>Id.</u> at 1364.  The

court could not presume that all of the defendants' advertisements regarding the 900-number programs were misleading "because each individual plaintiff bears the burden of proving that the ad upon which he relied was misleading." Id. Furthermore, use "of a presumption is improper because each individual plaintiff may be the only person with critical information about the content of the ad upon which he relied; this content is evidence necessary to determine whether the ad was misleading or fraudulent."[12] Id.; cf Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 724 (11th Cir. 1987)(reversing a district court's determination that a putative class action was not suitable for class treatment where there was no evidence that oral representations to the plaintiffs "varied materially from the misleading information alleged to have been disseminated generally as a result of the defendants' common schemes").

The similarities of Andrews and Sikes to the present case are compelling. Despite Dunlap's efforts to focus on the broad scheme and to downplay or ignore any case-by-case oral communications, Sikes makes it clear that the manner in which the transaction unfolded, including oral communications between each individual customer and each individual sales person, is an essential element of each individual claim. Paraphrasing the words of that decision, each individual class member is the only person with information about the content of the statements by the salesperson that are alleged to be misleading, the

---

[12] This is similar to West Virginia's requirement that a consumer's prima facie case of demonstrating "any ascertainable loss" under the West Virginia Consumer Protection Act requires proof that he "purchased an item that is different from or inferior to that for which he bargained." In re W. Va. Rezulin Litig., 214 W. Va. 52, 75, 585 S.E.2d 52 (2003)(citing W. Va. Code § 46A-6-106).

manner in which the scheme may have been concealed from the consumer, and whether the purchaser was actually misled into purchasing the insurance. Each customer is the only party who can prove reliance, injury, and damages, whether they may be actual, punitive, or for emotional distress. All these individualized issues make it clear that the common issues of law or fact in this case do not predominate over the individualized showings that the Court would be forced to handle and address through potentially hundreds of mini-trials. *See* Sikes, 281 F.3d at 1366 ("These claims will involve extensive individualized inquiries on the issues of injury and damages - so much so that a class action is not sustainable.").

The argument that the potential small damage amounts suffered by each class member renders class relief superior to individual cases has not been supported by any evidence. Indeed, because of the existence of claims for emotional and mental distress, "aggravation," "anxiety," "annoyance," "inconvenience," punitive damages, and attorneys' fees, it is not conceivable that such a showing could be made here. Finally, any concern that decertification of the Dunlap Class will inhibit class members with small individual claims from pursuing the Defendants is negated by the variety of damages prayed for under the West Virginia Consumer Protection Act or under Dunlap's common law counts, which include attorneys' fees and punitive damages. *See* Andrews, 95 F.3d at 1025 (finding that "even small individual claims under RICO can be feasible given the possibility of the award of treble damages and attorneys' fees to successful plaintiffs.").

# O R D E R

Because the Dunlap Class does not satisfy the requirements of Federal Rules of Civil Procedure 23(b)(1)(A) and 23(b)(2), IT IS THE ORDER OF THIS COURT that ABI's motion to decertify the Dunlap Class is GRANTED.

Furthermore, certification of the Dunlap Class under Federal Rule of Civil Procedure 23(b)(3) is DENIED.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia

This 16th day of March, 2007.